# Exhibit B

*Deposition of Deputy Taylor Zackman*

*March 8, 2023.*

Page 1

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT OF THE
STATE OF FLORIDA IN AND FOR HILLSBOROUGH COUNTY

STATE OF FLORIDA,

    Plaintiff,

        vs.                 CASE NO. 22-CF-011334

JULIAN ANDREWS,

    Defendant.
_____/


VIRTUAL DEPOSITION OF DEPUTY TAYLOR ZACKMAN


DATE:                    March 8, 2023

TIME:                    2:46 p.m.

PLACE:                   Various Remote Locations
                         Via Zoom Video Communications




REPORTER:                KIMBERLY L. RENFROE, RPR
                         Registered Professional Reporter

DISC-00253

Page 2

VIRTUAL
APPEARANCES:               CHRISTINE E. BOULOS, ESQUIRE
                           Assistant State Attorney
                           419 Pierce Street
                           Tampa, Florida  33602
                                For the State


                           VICTORIA E. HATFIELD, ESQUIRE
                           O'Brien Hatfield Reese, P.A.
                           511 West Bay Street
                           Suite 330
                           Tampa, Florida  33606
                                For the Defendant


ALSO PRESENT:              Hana Shitama, Paralegal
                           O'Brien Hatfield Reese, P.A.

DISC-00254

Page 3

INDEX

March 8, 2023

VIRTUAL DEPOSITION OF DEPUTY TAYLOR ZACKMAN

     Direct Examination by Ms. Hatfield .............4

     CERTIFICATE OF OATH ...........................17

     REPORTER'S DEPOSITION CERTIFICATE .............18

DISC-00255

Page 4

DEPOSITION IN DISCOVERY

DEPUTY TAYLOR ZACKMAN

Pursuant to notice duly given, the virtual deposition of DEPUTY TAYLOR ZACKMAN, called by the Defendant in the above-styled cause, was taken by me, a Notary Public in and for the State of Florida at Large, at the time and place and in the virtual presence of counsel enumerated on Page 2 hereof.

Thereupon, it was stipulated and agreed by and between the attorneys for the respective parties, by and with the consent of the said DEPUTY TAYLOR ZACKMAN, that signature to the said virtual deposition be waived.

THE COURT REPORTER:  Would you raise your right hand for me, please?

Do you swear or affirm that the testimony you're about to give will be the truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

THE COURT REPORTER:  Thank you.

DEPUTY TAYLOR ZACKMAN, having been first duly sworn via Zoom Video Communication, upon interrogation in discovery, testified as follows:

DIRECT EXAMINATION

BY MS. HATFIELD:

Q.   Can you state your first and last name for me?

DISC-00256

Page 5

A.   Sure.  My first name is Taylor, and my last name is Zackman.

Q.   And are you currently employed with the Hillsborough County Sheriff's Office?

A.   Yes.

Q.   In what capacity?

A.   Patrol.

Q.   Okay.

And were you on patrol back in August of 2022?

A.   Yes.

Q.   And do you have any law enforcement experience other than the sheriff's office?

A.   Yes.  I was a police officer in New Jersey for like three-and-a-half years before coming to Hillsborough.

Q.   What was your rank in New Jersey?

A.   I was just a patrolman.

Q.   Okay.

How long have you been with the sheriff's office down here, total?

A.   Just under two years.

Q.   Okay.

When did you start?

A.   2021; September 2021.

Q.   So it had been about a little over a year at

DISC-00257

Page 6

the time of this case on August 21st, 2022?

A.   Yes.

Q.   Okay.

All right.  If you could just take me through how you became involved in this case.

And let me -- sorry, let me just be clear.  I'm not interested in what anyone else did, just -- or what anyone told you; I'm just interested in what you did, basically.

A.   Okay.

Yeah.  All -- all that I did, I was actually in the area when Deputy Maldonado conducted a traffic stop on that vehicle -- or motorcycle.  I was actually coming westbound on 92 when he initiated his lights; so I was right there.

I went into the Circle K parking lot right, behind Deputy Maldonado and the motorcycle, and then I noticed that the driver started start to try to -- like he didn't stop; like, he -- he came in the parking lot and he started to -- I don't know really how to explain it, but with his feet, like tried to keep rolling backwards on the motorcycle.  And then I believe, like, the motor -- the engine cut out and that's when he ditched the bike and started running on Parsons.

Q.   Okay.

A.    And I was with Deputy Maldonado during that foot pursuit.  And I assisted in actually placing him under arrest, and searching his person and his -- the bags that he had on him.  And that -- that was all my involvement.

Q.    Okay.

Did you participate in actually getting him secured in handcuffs?

A.    Yes.  It was just him and I.

Q.    Okay.

So where was the backpack at the time that Mr. Andrews was tased and on the ground?

A.    So originally it was on his back.  He started running on Parsons, and at the time that he was tased, he was trying to bring the backpack towards like his front, like from his back towards like his front area; and that's when he was tased.

Q.    Okay.

And when he was bringing it to the front area were -- were you all concerned he was going to go inside of it or did you see him actually go inside of it?

A.    Yeah.  There was definitely concern that he was going to go inside of it.  He was making movements like he was trying to get inside the bag.

Q.    Uh-huh.

DISC-00259

Page 8

A.    And that's when Deputy Maldonado deployed his taser.

Q.    Okay.  But can anyone testify that he actually opened the bag and put his hands inside?

A.    We're running behind him, so I mean I wouldn't be able to.  There was no one in front of him at that time.

Q.    Fair enough.

So it's on his bag -- back, and then he moved it to the front, you all tase him, he falls to the ground.

A.    Uh-huh.

Q.    Where is the backpack when he falls to the ground and you're trying to put him in handcuffs?

A.    I would have to review my -- my video --

Q.    Okay.

A.    -- the body camera.  Just because of the -- the amount of time that it's been from then until now --

Q.    That's a --

A.    -- I can't give you like a definitive --

Q.    That's a --

A.    -- answer where it was.

Q.    That's a perfectly fair answer.  And that's fine, and on that issue we'll just let the body cam speak for itself.

A.    Uh-huh.

Page 9

Q. Did you actually get Mr. Andrews in handcuffs?

A. We both -- we both did. He was -- kind of because -- I mean he was tased, so he was kind of, I would say dazed in a way, that it took him -- it took us a little bit to get him into custody; so both of us just pretty much took one arm, one on each side, we were on both sides of him, and we put him into custody.

Q. Okay.

A. It was -- I believe Deputy Maldonado was the one who put his handcuffs on him.

Q. Did -- did you know the reason for the traffic stop?

A. Yes. It was his tag light was improperly displayed; and I observed that as well when I was in that area. So yeah, that's --

Q. Okay.

So at the point that you're arresting him, what are you arresting him for, do you know? Are you able to speak to that?

A. So, usually if -- if a subject -- if we're conducting a traffic stop and they flee on foot, it would be resist without violence.

Q. Okay.

A. And then anything subsequent to arrest from that would just go from there.

DISC-00261

Page 10

Q.   So at the moment that you're handcuffing him and putting him in custody, the charge at that point is resisting without violence; do I have that correct?

A.   Yes.

Q.   Okay.  Anything else at that point?  I know more stuff comes in later but at that point --

A.   So it depends.  If the deputy initiated sirens or anything like that, then they can sometimes be fleeing to elude.  But the -- the -- at least it would be resist without violence.

Q.   So resisting without violence, maybe a fleeing to elude if we look at case law and whether or not the siren was going; anything else at that point that you can think or the potential of anything that you can think of?

A.   No, that's it.

Q.   Okay.

So I -- I'm going to ask the same questions that I asked the other officers.  I watched body camera footage; I wasn't sure who was who, but it looks like after Mr. Andrews was detained -- because there's just two officers there at this point, yourself and the other guy, right?

A.   Yeah.

Q.   The -- Maldonado.

DISC-00262

Page 11

A.     Uh-huh.

Q.     One of you escorts Julian Andrews forward, you know, to where everybody else is, and the other one of you gathers things off the ground, it looks like a wallet and a backpack and some other loose items, and then takes that to a truck.

A.     Yes.

Q.     Is that what happened; and if it was, which one did you do?

A.     Yeah.  That -- I took it to my -- my pick-up truck.  So I took his belongings while Deputy Maldonado took him back to his vehicle.

Q.     Okay.

And what did you pick up off the ground, do you remember?  We know the backpack; what else?

A.     I know the backpack and at least, like you said, his wallet.  I know for a definitive fact that it was -- I definitely took the backpack back.

Q.     Okay.

And at the time that you're picking up all these items, is it fair to say that Mr. Andrews is detained and secured at this point?

A.     Yes.

Q.     Are you still in fear?  Is there still an officer safety concern with the backpack or is he, you

DISC-00263

Page 12

know, detained enough that there is no more concern?

A.   I would say no, he's -- he's placed in custody; there wouldn't be any -- any more concern.

Q.   In fact one of you is escorting him, not even both of you; right?

A.   I believe I was right there.  Like along -- like right next to him.

Q.   All right.  Got it.

And then you take everything to your truck.  Is that your truck?

A.   Yes, the pick-up truck.

Q.   Okay.

And then the video shows you, like, open the backseat, you put on gloves and then you start the search.

A.   Uh-huh.

Q.   Is that how you remember it?

A.   Yes.

Q.   So at -- what is the search at that point?  Is it a search incident to arrest, what is it?

A.   Yes; search incident to arrest.

Q.   Okay.

Did you have any sort of tip that you're aware of that somebody told you pull over this motorcycle or was this just a lucky stop?

DISC-00264

Page 13

A.    No.  It was just a regular traffic stop.

Q.    At the time that you conduct the search, do you know anything about Mr. Andrews's background, whether or not he has active warrants, anything like that?

A.    No, not then.  It just happened so fast from the time the traffic stop to him taking off on foot, I didn't even run his tag, anything like that because it was -- his tag was obstructed.  We called it in as an obstructed tag so I had no information on him.

Q.    Okay.

And this is a search incident to arrest, at this point, to resisting without violence, correct?

A.    Yes.  Search incident to arrest, yes.

Q.    And by the time you get to the bed of your pick-up truck, now Mr. Andrews is father away and now with other officers that arrive on back-up; correct?

A.    Yes.  Yes.

Q.    Okay.  Did you have any reason to believe you were going to find cocaine or any other drugs before you opened the backpack?  Like any other tip, any -- anything that makes you --

A.    No.  No information or anything along those lines.

Q.    Okay.

DISC-00265

Page 14

Were you surprised by the amount of things that you found in the backpack?

A.   Yes.  I'd say so.

Q.   Was all the contraband that you found in this case in the backpack or was any of it, the loose items or in the wallet, anywhere other than the backpack?

A.   It was all in the backpack.

Q.   Okay.

Did you find items in the backpack that indicated that Mr. Andrews owned the contents inside; specifically paperwork, credit cards, IDs, anything like that?

A.   Not to my knowledge.

Q.   Okay.

Do you know if any of the items in the backpack were photographed?

A.   Yes, they were.

Q.   Did you do that or somebody else?

A.   I would say Deputy Maldonado did it.

Q.   Okay.

A.   But it definitely would have been photographed and uploaded.

Q.   What did you do after you did the search?

A.   I didn't -- I left the scene after --
Deputy Maldonado, I'm pretty sure, he took custody of the defendant and the contents as well.

Page 15

Q.   Okay.

Did you hear Mr. Andrews make any statements in your presence that you would be able to testify to?

A.   No, ma'am.

Q.   Okay.

Anything else that -- oh, when did you find out there were warrants out for his arrest?  How did that come to be?

A.   Not until after the fact.

Q.   Did you find that out though?  I'm just trying to figure out how you learned about it.

A.   Once he was in custody Deputy Maldonado let me know that he had warrants and all that.

Q.   And this was well after the search?

A.   Yes.

Q.   Okay.

Did you have anything to do with running the tag on the bike?

A.   No.

Q.   Okay.

MS. HATFIELD:  I don't have any other questions.

I will pass the witness.

MS. BOULOS:  And there are no questions from the State.

DISC-00267

Page 16

Thank you, sir.

MS. HATFIELD:  Sir, do you want to read or waive?

THE WITNESS:  Waive, please.

MS. HATFIELD:  Sorry, you cut out.  What was that?

THE WITNESS:  I'll waive.

MS. HATFIELD:  Waive.  Okay.  Perfect.

Have a great day.  Thank you for being here.

THE WITNESS:  Thank you.  You as well.

MS. HATFIELD:  Okay.

THE WITNESS:  Bye.

THEREUPON, the deposition concluded at 2:59 p.m.

Page 17

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

I, the undersigned authority, certify that DEPUTY TAYLOR ZACKMAN personally appeared before me via Zoom Video Communications on March 8, 2023 and was duly sworn.

Witness my hand and official seal this 15th day of April, 2023.

_____
KIMBERLY L. RENFROE, RPR
Registered Professional Reporter

Notary Public, State of Florida
Commission No.:  HH 80650
Expiration date:  1/31/25

Page 18

REPORTER'S DEPOSITION CERTIFICATE

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

I, KIMBERLY L. RENFROE, Registered Professional Reporter, certify that I was authorized to and did stenographically report the virtual deposition of DEPUTY TAYLOR ZACKMAN; that a review of the transcript was not requested; and that the transcript is a true and complete record of my stenographic notes.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with this action, nor am I financially interested in the action.

Dated this 15th day of April, 2023.

_____
KIMBERLY L. RENFROE, RPR
Registered Professional Reporter

(Transcript was ordered by Victoria E. Hatfield, Esquire, on March 23, 2023.)

DISC-00270