UNITED STATES OF AMERICA

    v.                          CASE NO. 8:24-CR-485-CEH-NHA

JULIAN ANDREWS

## RESPONSE TO MOTION TO SUPPRESS

On August 21, 2022, Hillsborough County Sheriff's Office Deputies arrested the Defendant after he fled from a traffic stop. During the arrest, Defendant lost control of a backpack that he was carrying when he tased. Defendant then disclaimed ownership of the backpack, allowing law enforcement to search it, which led to the recovery of the firearm and narcotics. While not qualifying as a search incident to arrest, law enforcement would have had to inventory the backpack that the Defendant abandoned, which also would have led to the discovery of the contraband at issue.

**Statement of Facts**

1. On August 21, 2022, Deputy Alexander Maldonado of the Hillsborough County Sheriff's Office initiated a traffic stop on a motorcycle driven by the Defendant for an improper tag display. Dkt. 36-1 at 6:7-18.

2. At the time, the Defendant had multiple pending warrants. *Id.* at 12:21-13:5.

3. The Defendant stopped the motorcycle but subsequently fled on foot while wearing a black backpack. *Id.* at 9:14-21, 10:8-13.

4. During the pursuit, the Defendant took the backpack off his back and began carrying it in his left hand, then his right hand, before bringing it to his chest. *Id.* at 10:15-12:1.

5. Due to safety concerns related to why the Defendant seemed to be trying to access something in the bag, Deputy Maldonado deployed his taser, eventually leading to the arrest of the Defendant. After the Defendant fell forward, the backpack ended up three to five feet in front of him. *Id.* at 14:10-15:23.

6. After the Defendant was secured, he was asked if he had a gun on him, and the Defendant responded that "all I was doing he told me to bring that stuff down there." Ex. 1 (Dep. Maldonado BWC) at 4:08-4:17.[1] Shortly thereafter, he made a spontaneous statement that he got on the bike and somebody told him to take the backpack up the street. *Id.* at 6:10-6:20. When asked why he was trying to get rid of the bag, the Defendant responded "It ain't mine" and that he did not know what was in the bag. *Id.* at 7:00-7:30.

7. After the Defendant was secured in a patrol vehicle, Deputy Zachman searched the backpack, recovering contraband. Ex. 36-1 at 17:5-18:12, 19:6-7; Ex. 36-2 at 14:4-7.

---

[1] A disc with the Body-Worn Camera video will be sent to Chambers and to the Clerk's Office.

## ARGUMENT

**I.**     <u>**The Defendant abandoned his interest in the bag when he declared that it was not his.**</u>

After telling law enforcement that the bag was not his, the Defendant cannot now claim that he maintained a reasonable expectation of privacy in the bag that law enforcement then searched.

A person generally has a reasonable expectation of privacy in bags and personal luggage. *See U.S. v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001). "However, an individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police." *Id.* When analyzing abandonment, the "critical inquiry is whether the person prejudiced by the search…voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* (internal quotations omitted). This is "a question of intent that may be inferred from acts, words and 'other objective facts.'" *Id.* (quoting *U.S. v. Pirolli*, 673 F.2d 1200, 1204 (11th Cir. 1982)). "Abandonment is involuntary when precipitated by police misconduct." *Id.* at 1307 (citing *Pirolli*, 673 F.2d at 1204). The Government bears the burden of proving abandonment. *Id.* at 1306.

Here, the Defendant made clear that he was delivering the bag for someone else and that the contents were not his. He explained that this was someone else's bag and that he was just delivering it to a location up the street. When asked about

why he was trying to get rid of the bag, he unequivocally stated that "It's not mine." Furthermore, he said he did not even know what was in the bag. The denial of ownership was clear and constitutes abandonment. *See Cofield*, 272 F.3d at 1306. Nor was it caused by any police misconduct, as the Defendant has not challenged the legality of the stop or the arrest. *See U.S. v. Cooley*, 552 F.Supp.2d 1284, 1292 (N.D.Ala. 2008) (finding no abandonment after an illegal seizure).

In *U.S. v. Lindsey*, Judge Mizelle analyzed abandonment in the context of vehicles versus personal items. As the Court explained, a disclaimer of ownership must be considered in context of the item at issue. 691 F.Supp.3d 1370, 1379 (M.D.Fla. 2023).

> "Portable personal items, like luggage, can be abandoned in a different manner than sizable personal property or real property, like cars and houses. Unlike luggage, cars and houses are relatively large, ordinarily contain several rooms or compartments, and are often shared with friends and family. *See, e.g.*, *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) ("[The defendant's] status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable.")....When someone unequivocally declares "that's not my bag," his statement suggests an intent to disclaim ownership and a possessory right to the item. This is true, in part, because bags are not usually shared, and the contents of the bag are easily known to the possessor of the bag."

*Id.* This is exactly what the Defendant did here – declare that the backpack was not his – thereby disclaiming ownership in a personal item and waiving the right to contest the search.

**II.** <u>**Law enforcement would have inevitably searched the bag as part of an inventory search.**</u>

Even if the Defendant had not abandoned the backpack and even if Deputy Zachman had not conducted the search incident to arrest, the Deputies would have conducted an inventory search prior to impounding the property. Accordingly, the inevitable discovery rule would apply.

Under the exception for "inevitable discovery," the government may introduce evidence that was obtained by an illegal search if the government can establish by a preponderance of the evidence "that the evidence in question would have been discovered by lawful means." *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015), (quoting *Jefferson v. Fountain,* 382 F.3d 1286, 1296 (11th Cir. 2004)), *overruled by United States v. Watkins*, 10 F.4th 1179, 1181 (11th Cir. 2021) (establishing the preponderance of the evidence standard for the inevitable discovery rule).

The Defendant here was going to be arrested before he fled based on his outstanding warrants, and he was going to be arrested after he fled for resisting without violence. As part of the arrest, the Deputies were going to need to impound his property, leading to an inventory search. Defendant's assertion that it is "customary practice" to allow an arrestee to call and ask for someone to pick up his or her property is incorrect. The presumption is that a person's property will be impounded. The Hillsborough County Sheriff's Office Standard Operating Procedure describes the search as "not discretionary," and, in the context of vehicles, requiring a full search of all compartments. Ex. 2 (SOP 565.00), § IV.G. The purpose

of the search is to protect the arrestee's property and to protect law enforcement from danger. *Id.*

The Defendant's contention that an arrestee can have someone retrieve property refers to situations where law enforcement has determined that there is no risk, usually through a search of the property, and can determine the actual owner of the property. For example, in instances where a Deputy knows that the personal property, whether it be a vehicle or a bag, contains no items that would constitute a threat to officer safety, a Deputy could release the property to a third person if that person is on the scene.

The Defendant cannot, however, ignore the circumstances surrounding the backpack. First, based on what the Defendant did with the bag during the chase – bringing it to his chest, possibly to retrieve a weapon or discard contraband – no law enforcement officer would allow the bag to be handed to a third person without first ensuring doing so would not create a safety risk. Given the reasonable possibility that the backpack contained a weapon, this would constitute an immediate threat to officer safety.

Second, the Defendant's hypothetical scenario where he is allowed to call an unknown person to retrieve the bag ignores that the Defendant himself denied the bag was his. During this arrest, Defendant never sought to contact anyone. It is not clear who he would have burdened with a backpack that contains narcotics and a

firearm, or who he could have trusted not to immediately allow law enforcement to search the bag on request.

Given the presumption of an inventory search of personal property at the time of arrest, the Government can show by a preponderance of the evidence that Deputies would have conducted a search of the backpack.

## Conclusion

For the foregoing reasons, the Court should deny the Defendant's Motion to Suppress.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:   */s/ Michael R. Kenneth*
    Michael R. Kenneth
    Assistant United States Attorney
    Florida Bar No. 44341
    400 North Tampa Street, Suite 3200
    Tampa, Florida 33602
    Telephone: 813-274-6000
    Facsimile: 813-274 6103
    E-Mail: michael.kenneth@usdoj.gov

**U.S. v. Julian Andrews**                               Case No.  8:24-cr-485-CEH-NHA

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to counsel for the parties of record.

> */s/ Michael R. Kenneth*
> Michael R. Kenneth
> Assistant United States Attorney
> Florida Bar No. 44341
> 400 North Tampa Street, Suite 3200
> Tampa, Florida 33602
> Telephone: 813-274-6000
> Facsimile: 813-274 6103
> E-Mail: michael.kenneth@usdoj.gov